UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Carolina Burrows, et al.,                                    Case No.  1:12-dp-21436

                    Plaintiffs

         v.                                                  MEMORANDUM OPINION


DePuy Orthopaedics, Inc., et al.,

                    Defendants


This matter is before me on the Defendants' motion to dismiss Plaintiffs' complaint on *forum non conveniens* grounds.  (Doc. No. 13).  Also before me are Plaintiffs' opposition (Doc. No. 14), Defendants' reply (Doc. No. 15), Plaintiffs' surreply (Doc. No. 18), Plaintiffs' November 6, 2017 letter (Doc. No. 19), Plaintiffs' notice of motion pending (Doc. No. 20), Defendants' notice of supplemental authority (Doc. No. 21), Plaintiffs' notices regarding Defendants' continued pursuit of discovery (Doc. No. 22 and Doc. No. 24), and Defendants' letters dated January 19, 2018 (Doc. No. 23), and  December 12, 2018 (Doc. No. 25).  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. MDL BACKGROUND

This case is one of many which comprise this multidistrict litigation involving the DePuy ASR hip device which was transferred to this Court in December 2010 by the Judicial Panel on Multidistrict Litigation:

> The actions share factual issues as to whether DePuy's ASR XL Acetabular Hip System, a device used in hip replacement surgery, was defectively designed and/or manufactured, and whether DePuy failed to provide adequate warnings concerning

the device, which DePuy recalled along with another ASR device, the ASR Hip Resurfacing system, in August 2010.

*In re DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation,* Case No. 10-md-2197 (N.D. Ohio) (Doc. No. 1).  In addition to this MDL, litigation began in numerous state courts including coordinated state court proceedings in California, New Jersey, and Illinois.  My colleague, Judge David A. Katz, was assigned this litigation by the Judicial Panel on Multidistrict Litigation.

In January 2011, Judge Katz held a hearing to address initial matters pertaining to this MDL. (Doc. No. 7).  He entertained presentations by 82 of the 95 applications seeing appointment to the plaintiffs' leadership.  (Doc. No. 63).  After the leadership was established (Doc. No. 71), and at the first official status hearing, the leadership detailed the efforts aimed at discovery, including development of an explant protocol.  (Doc. No. 63).  There was discussion by both sides regarding coordination with state courts, specifically California and New Jersey, as was done in Judge Katz's prior MDL.  (Doc. No. 63).  Judge Katz advised there would be monthly meetings of the leadership to keep the litigation on track.

The leadership and their committees began their work in earnest and met regularly with the Court.  By the middle of 2013, over 8,500 cases had been filed in this MDL docket with nearly 12,000 individual plaintiffs.[1]  The leadership worked collaboratively with each other and the cooperating state courts to create "a singular work product[2] encompassing the document review, depositions, experts, trial strategies, preparation and exhibits" for use in those respective jurisdictions.  (CMO 16, Doc. No. 620).

---

[1]  In all, there were 10,054 cases filed in this MDL.

[2]  At the November 19, 2013 hearing, lead defense counsel reported producing 77 million pages of documents, producing approximately 60 company and third-party witnesses for depositions conducted over 100 days, with those depositions totaling nearly 40,000 pages of transcripts and comprising approximately 1,000 hours.  (Doc. No. 624 at pp. 10-11).

At a hearing on November 19, 2013, this Court along with state court judges from California, New Jersey, Illinois, and Maryland, announced the parties had reached a private, global settlement agreement. Judge Katz then appointed a Plaintiffs' Oversight Committee to:

> [A]ddress prospective resolution, build consensus, effectuate a fair settlement for all who may qualify under the terms of a private resolution agreement, and assist and oversee the program which would be developed as a result of any private resolution as well as interact with those federal and state courts having jurisdiction over cases relating to the ASR Hip matter and take all actions necessary and/or incidental to the fair resolution of claims of those individuals entitled to compensation under the terms of said private resolution agreement.

(*Id.* at pp. 2-3.)

In conjunction with the DePuy Master Settlement Agreement, the Court approved the appointment of a Claims Administrator and three Special Masters to provide review of the claims process as well as address disputes related to the settlement. (CMO No. 17, Doc. No. 636).

This settlement and subsequent settlements have resulted in resolution for thousands of claimants who had the ASR device implanted. By the summer of 2016, the total number of cases in the MDL was reduced to approximately 2,500. Sadly, Judge Katz passed away unexpectedly at the end of July 2016, and this docket was transferred to me on September 2, 2016. (Doc. No. 1079).

Having provided a brief background of the MDL, I now turn to the Plaintiffs' specific case.

## II. THE BURROWS LITIGATION

DePuy International Limited designed and manufactured the ASR™ Hip System, a replacement hip for patients experiencing hip joint diseases. (Declaration of Kristen L. Mayer ("Mayer Decl.") at ¶ 4.) It is incorporated and operated in the United Kingdom. DePuy Orthopaedics, Inc. is the Indiana-based company that distributed the ASR™ Hip System in the United States. (*Id.* at ¶ 6.) In Spain, the ASR™ Hip System was distributed by Johnson & Johnson, S.A., a company incorporated there. (*Id.* at ¶ 5.) In August 2010, DePuy recalled the ASR™ Hip

System and, as a result, its international affiliates (including DePuy Orthopaedics, Inc. in the United States and DePuy International Limited in Spain) withdrew the ASR System. (*Id.* at ¶¶ 7-8.)

At all times relevant Plaintiffs Carolina and Colin M. Burrows were residents of Spain. Their complaint alleges DePuy's ASR XL Acetabular Hip System was defectively designed and manufactured, or both. They further contend DePuy failed to provide adequate warnings concerning the device, which DePuy recalled along with another ASR device, the ASR Hip Resurfacing System in August 2010. Mrs. Burrows was implanted with the ASR hip in April 2009 in Spain. All of her ASR™ hip implant-related medical care occurred in Spain and was paid for under the Spanish social security system. (Short Form Compl., Doc. 1, ¶¶ 3, 6-7, 13-15, 24-25; Plaintiff Fact Sheet ("PFS"), at pp. 3, 6-7, 13-15, 24-25 attached to Mayer Decl. at Tab 2).

### III. DEFENDANTS' MOTION TO DISMISS

#### A. Applicable Legal Standard

Under the doctrine of *forum non conveniens*, a court may dismiss actions brought by a foreign plaintiff whose claims would be more appropriately and justly tried in the plaintiff's home country.

> *Forum non conveniens* dismissal involves a three-step analysis. After the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests.

*Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016) (citing *Rustal Trading US, Inc. v. Makki,* 17 F. App'x 331, 335 (6th Cir. 2001)).

Where appropriate, the trial court must address the proper degree of deference due to a plaintiff's forum selection. *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 525 (6th Cir. 2010). Finally, a "*forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

**B. Plaintiffs' Choice of Forum**

As the analysis in a *forum non conveniens* case depends on the particular facts presented in that case, "the Supreme Court has 'repeatedly rejected the use of *per se* rules in applying the doctrine.'" *Hefferan*, 828 F.3d at 493 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 455 (1994) (quotation marks omitted)). The Sixth Circuit has noted that "[a] foreign plaintiff's forum choice is usually accorded less deference because the assumption of convenience is 'much less reasonable.'" *Id.* at 494 (quoting *Piper Aircraft*, 454 U.S. at 245).

"A person's true home, the centuries-old concept of domicile, requires physical presence and intent to remain: that is, 'residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.'" *Id.* at 493 (quoting *Mitchell v. United States*, 88 U.S. 350, 352 (1874)). The Burrows were residents of Spain from 2006 through 2013; the Plaintiffs have not shown that their decision to file suit in the United States was motivated by a legitimate reason such as convenience or the ability to obtain jurisdiction over the defendants rather than tactical advantage. *See id.* (citing *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72-73 (2nd Cir. 2001)). Therefore, the presumption of convenience applies with less force to their choice of the United States as a forum. *Id.*

**C. Adequacy of Spain as an Alternative Forum**

The "adequate alternative forum requirement is satisfied by showing that a defendant is 'amenable to process' in the foreign jurisdiction." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide,* 545 F.3d 357, 365 (6th Cir. 2008) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947)). In response to the risk that American courts would become overly-attractive to foreign litigants, this Court does not weigh the relative favorability of each forum's law unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all…." *See Piper Aircraft*, 454 U.S. at 263-65; *Hefferan*, 828 F.3d at 495 ("Law that is simply

less favorable to the plaintiff in the alternative forum is not so extraordinary as to render that forum inadequate.") (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 831 (6th Cir. 2009)).

An alternative forum is adequate if it provides some potential avenue for redress even if it fails to provide the same range of remedies as the original forum. *See*, *e.g.*, *Piper Aircraft*, 454 U.S. at 254-55 (finding Scotland adequate even though plaintiffs would be barred from bringing strict liability claims and would be subject to lower damage limits); *Wong*, 589 F.3d at 831 ("[T]he inability to bring a class suit would not render Gibraltar an inadequate alternative forum."). The Sixth Circuit notes, "[t]he relevant question for purposes of *forum non conveniens* is whether those differences render the possible remedy so clearly inadequate that forcing a plaintiff to bring suit there would be unjust." *Hefferan*, 828 F.3d at 495.

In this case, Spain provides ample avenues to resolve Plaintiffs' claims. (Declaration of Joaquín Ruiz Echauri ("Echauri Decl.") at ¶ 21). The Spanish legal system provides multiple causes of action that would enable Plaintiffs to obtain relief for injuries asserted in their complaint, including claims based on negligence as well as Spain's product liability law. (*See* Echauri Decl. at ¶¶ 6, 11, 27-32); s*ee also Kryvicky v. Scandinavian Airlines System,* 807 F.2d 514, 518 (6th Cir. 1986) (affirming lower court finding of Spain as an adequate alternative forum for adjudication of wrongful death claims against airline and aircraft manufacturer arising out of plane crash in Madrid); *Barak v. Zeff*, 289 F. App'x 907 (6th Cir. 2008) (affirming lower court finding of Spain as an adequate alternative forum for the adjudication of Plaintiff's fraud, misrepresentation, and intentional infliction of emotional distress claims).

In addition, dismissal on *forum non conveniens* grounds is conditioned upon the defendant's submission to the jurisdiction of the foreign court. *See Kryvicky*, 807 F.2d at 516. This condition is met in this case because Defendant DePuy International Limited, the proper Defendant for claims arising in Spain, has agreed to accept service of process there. (*See* Mayer Decl. at ¶ 3); (Echauri

Decl. at ¶ 36); *see also Stewart v. Dow Chemical Co.*, 865 F.2d 103, 107 (6th Cir. 1989). Further, the

Defendants agree they will waive any "applicable statute of limitations/repose defense that may be

available under Spanish law," and that they will "satisfy any final, post-appeal judgment awarded to

Plaintiffs." (Supplemental Declaration of Kristen L. Mayer, Doc. No. 15-1 at 2).

### D. Balance of Private and Public Interest Factors

In *Heffernan*, the Sixth Circuit addressed the balance of private and public interest factors:

> The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome
> falls on the defendant. That inquiry is guided by public- and private-interest factors
> set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). The
> 'obligation to consider all factors applies to each analytically distinct set of claims.'

*Hefferan*, 828 F.3d at 498 (citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006)).

Although a plaintiff's choice of forum ordinarily receives deference in weighing these

interests, that "assumption is much less reasonable" when the plaintiff is foreign because "the

central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, [and] a

foreign plaintiff's choice deserves less deference." *See Piper Aircraft*, 454 U.S. at 266. In addition, the

Court is more likely to dismiss in situations where a foreign plaintiff brings a tort action against a

U.S.-based company, but all relevant events occurred outside the United States. *See e.g., Kryvicky,* 807

F.2d at 518 (affirming dismissal of claims arising out of plane crash in Spain).

### E. Private Interest Factors

The relevant private interest factors to be considered include:

> [T]he relative ease of access to sources of proof; availability of compulsory process
> for attendance of unwilling, and the cost of obtaining attendance of willing,
> witnesses; possibility of view of premises, if view would be appropriate to the action;
> and all other practical problems that make trial of a case easy, expeditious and
> inexpensive.

*Gulf Oil,* 330 U.S. at 508.

Mrs. Burrows has never been a resident of the United States nor has she received medical

care here. (Doc. No. 13-1 at 3). It is undisputed she has lived in Spain for seven years, and all hip

implant-related medical treatment, including her implant, occurred in that country. (Doc. 1, ¶¶ 3, 6, 10; PFS at pp. 3, 6-7, 13-15, 24-25.) Thus, all evidence related to causation and damages is located in Spain, including key physician witnesses and documents. Moreover, Mrs. Burrows' medical history will likely play a large role in the adjudication of her claim, but her medical records and treating physicians – including those who implanted the device and those who removed it – are located in Spain. Last, no component of Plaintiff's ASR™ Hip System was designed, manufactured, assembled, or packaged in the United States. (Mayer Decl. at ¶¶ 4-6.)

A trial in the United States will unfairly prejudice the Defendants by imposing barriers on their ability to secure crucial medical evidence, and prevent them from presenting this evidence through the live testimony of the medical professionals involved in Plaintiff's care and treatment. Unlike Spanish courts, the United States lacks subpoena power to compel the production of Spanish witnesses for trial in this country. (Echauri Decl. at ¶ 36).

Defendants face a significant procedural hindrance if they cannot compel the attendance of critical third-party witnesses at trial, such as Plaintiff's treating physicians (including the physicians who surgically implanted and explanted the device at issue). *See Lee Yu- Ge v. Johnson & Johnson*, 2011 WL 3566859, at *3 (N.D. Ohio, Aug. 12, 2011) (dismissing case where plaintiff, her physician, and her medical records were all located outside the United States, and noting, "there is no ability to compel witnesses who reside in Taiwan to appear in [sic] United States") (citation omitted)); *see also Gulf Oil*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants.").

Most of the evidence relating to Plaintiffs' claims is in Spain, including documents and witnesses. The inability of this Court to compel the production of witnesses from Spain, and the

forced reliance on deposition testimony and medical records which must be translated to English are

facts which weigh in favor of the Defendants in this *forum non conveniens* analysis.

## F. Public Interest Factors

The analysis also requires consideration of the following public interest factors:

> [A]dministrative difficulties for courts; the local interest in having localized
> controversies decided in the home forum; imposition of jury duty on citizens of a
> forum that is unrelated to the subject of the litigation; [and] the avoidance of
> unnecessary problems in conflicts of law or in the application of foreign law.

*Gulf Oil*, 330 U.S. at 508-09.

Spain has a significant interest in Plaintiffs' claims because the alleged injury occurred in

Spain and the allegedly injured parties are Spanish residents. *Piper Aircraft*, 454 U.S. at 260 ("'[T]here

is a local interest in having localized controversies decided at home.") (quoting *Gulf Oil*, 330 U.S. at

509 (internal quotations omitted)). Spain also has an interest in Plaintiffs' product liability claims

because they squarely implicate the regulatory and policy judgments of Plaintiffs' home government.

Comity concerns also suggests deference to Spain which makes its own decisions about what

products it wants available to its citizens, including the regulatory and safety scheme it has devised

for doing so. *See Piper Aircraft*, 454 U.S. at 260-61. These decisions would be undermined if a

United States court and jury were entitled to hear and decide claims brought by the Burrows, who

were residents of Spain during the events at issue. As this Court explained in *Bloch:*

> The forum whose market consumes the product must make its own determination as
> to the levels of safety and care required. That forum has a distinctive interest in
> explicating the controlling standards of behavior, and in enforcing its regulatory
> scheme. The standards of conduct implemented, and the level of damages assessed,
> will reflect the unique balance struck between the benefit each market derives from
> the product's use and the risks associated with that use.

*Bloch v. DePuy Orthopaedics, Inc.*, 2012 WL 13034558, at *3 (N.D. Ohio, Sept. 12, 2012) (quoting *Doe v.*

*Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992)). The *Hyland* court also noted it

was "ill-equipped to enunciate the optimal standards of safety or care for products sold in distant

markets, and thus choose[s] to refrain from imposing [its] determination of what constitutes appropriate behavior to circumstances with which [it] [was] not familiar." 807 F. Supp. at 1129-30.

Additionally, trying Plaintiffs' case in the United States would create the problem of "conducting complex exercises in comparative law." *Piper Aircraft*, 454 U.S. at 251. Under the governing choice-of-law rules, Spanish law would likely apply, and this Court would have to engage in the cumbersome task of analyzing Spanish law and applying it to multiple principles of U.S. law, including negligence, products liability, and fraud. The United States Supreme Court has held that the burden of applying foreign law in such circumstances "point[s] towards dismissal." *Piper Aircraft*, 454 U.S. at 260.

In balancing all of the private and public interest factors in this case, I conclude they weigh in favor of dismissal on *forum non conveniens* grounds. Mrs. Burrows' claims have a seemingly tenuous connection to this country and she has ample opportunity to pursue her claims in Spain because DePuy International Limited has submitted to jurisdiction there. Additionally, Spain has a highly localized interest in adjudicating this controversy, while the United States has very little at stake. Finally, the Court would overburden local juries to decide a case concerning the injuries suffered by a foreign plaintiff in a foreign land. *See Gulf Oil*, 330 U.S. at 508-09 (finding the United States judicial system also has an important interest in avoiding both the congestion of the federal courts and the overburdening of taxpayers who would bear the costs for an action that has no connection to their country).

### G.  Timing

The Burrows contend that Defendants waived their *forum non conveniens* defense because they "knew the facts that form their [*forum non conveniens*] motion but failed to timely raise the defense." (Doc. No. 14 at 9). But neither this Court nor the Sixth Circuit has considered timeliness in a *forum non conveniens* analysis, and it need not do so here.

The Burrows rely on *Rustal Tradings* to support their position that "[a] motion for [*forum non conveniens*] dismissal must be made within a reasonable time after the defendant has become aware of the facts that form the basis of the motion." (Doc. No. 14 at 5 (citing *Rustal Tradings,* 17 F. App'x at 338)). There is nothing on the docket, however, to indicate that any case-specific discovery or movement was made in this case until sometime after December 2014, at which time Mrs. Burrows filed a Notice of Compliance regarding information relative to the private, national settlement. The Defendants' motion to dismiss was filed less than one year later. Accordingly, in the context of a multidistrict litigation docket, this Court finds a motion to dismiss on *forum non conveniens* grounds to be reasonably timed when made after case-specific discovery has commenced.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss on *forum non conveniens* grounds, (Doc. No. 13), is granted.

So Ordered.


s/ Jeffrey J. Helmick    4/30/19
United States District Judge